# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:  OWENS CORNING, *et al.*
                              Debtors.

Bankruptcy Case No. 00-3837
(Jointly Administered)

---

Price Management Control Corporation,  )
                                                            )   Civil Action No.  04-1359 JPF
                              Appellant,       )
                                                            )
v.                                                          )
                                                            )   Related to Docket Nos.: 9344 & 9834
Owens Corning,                                    )
                                                            )
                              Appellee.        )
                                                            )

---

## APPELLANT'S OPENING BRIEF

Richard H. Cross, Jr. (No. 3576)
Sean T. O'Kelly (No. 4349)
CROSS & SIMON, LLC
913 North Market Street, 11th Floor
Wilmington, Delaware 19801
(302) 777-4200


-and-


M. Shane Edgington
HENSLEY KIM & EDGINGTON, LLC
1660 Lincoln St., Ste. 3050
Denver, Co 80264
(720) 377-0770

Counsel for Price Management
Control Corporation

Dated:  June 1, 2005

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………i

TABLE OF AUTHORITIES…………………………………………………ii

BASIS OF APPELLATE JURISDICTION……………………………………2

STATEMENT OF ISSUES ON APPEAL……………………………………2

STANDARD OF REVIEW……………………………………………………3

STATEMENT OF THE CASE……………………………………………......5

STATEMENT OF FACTS……………………………………………………6

SUMMARY OF ARGUMENT………………………………………………10

ARGUMENT…………………………………………………………………11

     A.     The Agreement is a Valid and Enforceable Contract……………………12

     B.     PMCC Performed its Obligations……………………………………12

     C.     The Agreement Required Debtors to Implement the Hedging

           Program……………………………………………………………13

     D.     Summary Judgment is not Proper on PMCC's Fraud Claims…………20

     E.     Summary Judgment on PMCC's Unjust Enrichment Claim is

           Improper……………………………………………………………22

     F.     The Bankruptcy Court Failed to Consider Evidence of a Joint

           Venture……………………………………………………………...23

CONCLUSION………………………………………………………………24

## EXHIBITS

D.I. No. 11827, *E. Mirra Dep. At 26:15-24*…………………................................A

D.I. No. 11827, *M. Mitchell Dep. At 29:7-16*....................................................B

D.I. No. 11827, *Deposition Exhibit 75*...............................................................C

*M. Mitchell Dep. at 37:17-38:11*…………………………………………...D

# TABLE OF AUTHORITIES

## CASES

*Adler v. Wal-mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1998)………………………………………..………...……………4

*Allstate Ins. Co. v. Brown*,
92 F.2d 664 (10th Cir. 1990)……………………………………………………………..20

*American Fam. Mut. Ins. Co. v. Centura Health-St. Anthony Central Hosp.*,
46 P.3d 490 (Colo. App. 2002)……………………………………………………………22

*Backus v. Apishapa Land & Cattle Co.*,
615 P.2d 42 (Colo. App. 1980)……………………………………………………………22

*Baker v. Board of Regents*,
991 F.2d 628 (10th Cir. 1993)………………………....................................................4

*Bingama v. Kansas City Power & Light Co.*,
1 F.3d 976 (10th Cir. 1993)………………………………………………………………4

*Boyer v. Karakehian*,
915 P. 2d 1295 (Colo. 1996)………………………………………………………………14

*Brody v. Bock*,
897 P. 2d 769 (Colo. 1995)…………………………..................................................21

*Carey v. United States Postal Serv.*,
812 F.2d 621 (10th Cir. 1987)……………………………………………………………4

*Cheyenne Mountain School Dist. No. 12 v. Thompson*,
861 P.2d 711 (Colo. 1993)………………………………………………………….......14

*Dime Box Petroleum Corp. v. The Louisiana Land and Exploration Co.*,
938 P.2d 1144 (10th Cir. 1991)……………………………………………………...23

*Dorman v. Petrol Aspen, Inc.*,
914 9.2d 909 (Colo. 1996)………………………...................................................14

*Engineered Data Products, Inc. v. Nova Office Furniture Inc.*,
849 F. Supp. 1412 (D. Colo. 1994)………………………………………………4, 13

*F.D.I.C. v. First Interstate Bank of Denver, N.A.*,
937 F. Supp. 1461 (D. Colo. 1996)………………………………………………4, 13

*Federal Lumber Co. v. Wheeler,*
643 P.2d 31 (Colo. 1981)……………………….....………………………………………12

*Fox v. I-10, Ltd.,*
957 P.2d 1018 (Colo. 1998)………………………………………………………...16,19

*Hanson v. Chamberlin,*
233 P.830 (1925)…………………………………………………………………….…...20

*I.M.A., Inc. v. Rocky Mountain Airways,*
713 P.2d 882 (Colo. 1986)……………………………………………………………….12

*In re Gutpelet,*
137 F.3d 748 (3d Cir. 1998)…………………………………………………………….…3

*Keller v. A.O. Smith Harvestore Prods., Inc.,*
819 P.2d 69 (Colo. 1991)……………………………………………………………...…21

*KN Energy, Inc. v. Great Western Sugar Co.,*
698 P.2d 769 (Colo. 1985)……………………………………………………………….13

*Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.,*
965 P.2d 105 (Colo 1998)……………………………………………………………......20

*Messpierson, Inc. v. Strategic Telecom, Inc.*
202 B.R. 845 (D. Del. 1996) ……………………………………………………….......3

*Mehaffy, Rider, Windholz & Wilson v. Central Bank of Denver, N.A.*
892 P.2d 230 (Colo. 1995)………………………………………………………………..20

*Mellon Bank, N.A. v. Metro Communications, Inc.*
945 F.2d. 635 (3d Cir. 1991)………………………… …………………………….…...3

*Nelson v. Elway,*
908 P.2d 102 (Colo. 1995)………………………………………………………….…....14

*Pepcol Manufacturing Co. v. Denver Union Corp.,*
687 P.2d 1310 (Colo. 1984)……………………………………………………………....15

*Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,*
577 P.2d 748 (Colo. 1978)……………………… …………………………….........13

*Salzman v. Bachrach,*
996 P.2d 1263 (Colo. 2000)……………………………………………………………...22

*Smalley & Co. v. Emerson & Cuming, Inc.,*
808 F. Supp. 1503 (D. Colo. 1992)……………………………………………...4, 13
*Town of Alma v. Azco Construction, Inc.*
10 P.3d 1256 (Colo. 2000)……………………...…………………………………..21
*USI Properties East, Inc. v. Simpson,*
938 P.2d 168 (Colo. 1997)……………………....................................................14
*Western Distributing Co. v. Diodosio,*
841 P.2d 1053 (Colo. 1992)……………….....................................................11

## STATUTES/RULES

28 U.S.C. § 158(a)…………………………………………………………………...2
F.R.C.P. 56(c)………………………………………………………………………..4

## OTHER

Ballentine's Law Dictionary (1969)…………………………………………………15
CJI-Civ. 19:5 (2)…….…………………………………………………………….21
CJI-Civ. 19:5 (2004)………………………………………………………………20
Merriam-Webster's Collegiate Dictionary (10th Ed. 1998)……………………….15
Restatement (Second) Of Contracts § 17 (1) (1981)………………………… …………12
Restatement (Second) Of Torts § 551(2)…………………………… ...........................21

Pursuant to Rule 8010 of the Federal Rules of Bankruptcy Procedure, Appellants submit this brief in support of their appeal. Appellants state:

## I. BASIS OF APPELLATE JURISDICTION

Under 28 U.S.C. § 158(a), this Court has jurisdiction to adjudicate appeals from final judgments, orders and decrees of bankruptcy judges. Pursuant to Federal Rule of Bankruptcy Procedure 8013, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings."

## II. STATEMENT OF ISSUES ON APPEAL

1.    Whether the Bankruptcy Court erred as a matter of law in granting Debtors' Motion for Summary Judgment as to Price Management Control Corporation's Proof of Claim (Claim No. 6923).

2.    Whether the Bankruptcy Court erred as a matter of law in denying PMCC's Motion for Partial Summary Judgment on its breach of contract claim.

3.    Whether the Bankruptcy Court abused its discretion and erred as a matter of law by adding to, contradicting, and/or rewriting the terms of the October 23, 1998 Agreement to allow Owens Corning to implement and execute the Hedging Program at its discretion.

4.    Whether the Bankruptcy Court erred as a matter of law by ruling that Owens Corning was not unjustly enriched.

5.    Whether the Bankruptcy Court erred as a matter of law by ruling that PMCC was not fraudulently induced into the October 23, 1998 Agreement.

6.    Whether the Bankruptcy Court erred as a matter of law by ruling that Owens Corning did not fraudulently conceal from PMCC that it needed further approval before implementing and executing the Hedging Program.

7.    Whether the Bankruptcy Court erred as a matter of law by refusing to consider evidence and argument outside the contract with respect to PMCC's fraud and unjust enrichment claims.

8.    Whether the Bankruptcy Court erred as a matter of law by ruling that Owens Corning and PMCC did not enter into a Joint Venture agreement.

9.    Whether the Bankruptcy Court erred as a matter of law by ruling that the Debtor did not breach its fiduciary duties under the October 23, 1998 Agreement.

### III. STANDARD OF REVIEW

In reviewing a case on appeal, the bankruptcy court's factual determinations are subject to deference and shall not be set aside unless clearly erroneous. *See In re Gutpelet,* 137 F.3d 748, 750 (3d Cir. 1998). However, a bankruptcy court's conclusions of law are subject to plenary review and are considered de novo by the reviewing court. *Meespierson, Inc. v. Strategic Telecom, Inc.,* 202 B.R. 845, 847 (D. Del. 1996). Mixed questions of law and fact are subject to a "mixed standard of review" under which the appellate court accepts findings of "historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 641-642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101-02 (3d Cir. 1981)), cert. denied, 112 S. Ct. 1476 (1992).

3

Summary judgment is a drastic remedy and is only warranted where the moving party shows beyond a reasonable doubt that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *F.R.C.P. 56(c); Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir. 1993); *Carey v. United States Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987). A party may move for summary judgment on the basis that there is a lack of evidence on an essential element of the nonmoving party's claim. *Adler v. Wal-Mart Stores, Inc,* 144 F.3d 664, 671 (10th Cir. 1998). However, to defeat summary judgment, the nonmoving party need only set forth specific facts from which a reasonable jury could find in its favor. *See id.* Such facts may "be identified by reference to affidavits, deposition transcripts, or specific exhibits . . . ." *Id.* The specific facts adduced must be viewed in the light most favorable to the nonmoving party and all reasonable inferences must be drawn in its favor. *Id.* at 670. "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-2, 1065 S.Ct. 2505, 2511-12 (1986)).

On a motion for summary judgment, the Court may properly interpret contract language. *F.D.I.C. v. First Interstate Bank of Denver, N.A.,* 937 F. Supp. 1461, 1466 (D. Colo. 1996). In doing so, the Court must first determine whether a contract, or one of its terms is ambiguous. *Engineered Data Products, Inc. v. Nova Office Furniture Inc.,* 849 F. Supp. 1412, 1417 (D. Colo. 1994). In the absence of an ambiguity, the Court must interpret the contract as a matter of law, according to its plain and ordinary terms. *Smalley & Co. v. Emerson & Cuming, Inc.,* 808 F. Supp. 1503, 1514 (D. Colo. 1992).

## IV. STATEMENT OF THE CASE

On October 5, 2000, Debtor Owens Corning filed for protection under Chapter 11 of the Bankruptcy Code. On April 10, 2002, Price Management Control Corporation ("PMCC") filed a timely proof of claim in the bankruptcy proceeding (Claim No. 6923). Owens Corning filed an objection to PMCC's claim on August 28, 2003 and requested that the bankruptcy court disallow the claim in its entirety. [D.I. No. 9344]. On October 17, 2003, PMCC responded to Owens Corning's objection and asserted claims for breach of a October 23, 1998 contract between PMCC and Owens Corning (the "Agreement"), unjust enrichment, fraudulent inducement, fraudulent concealment, and breach of duties owed as a joint venturer. [D.I. No. 9834].

The parties conducted written and deposition discovery. Between May 12, 2004 and July 2, 2004, the parties moved and fully briefed cross-motions for summary judgment on PMCC's claims. [D.I. No. 11640-41, 11825-27, 11948-49, 11985]. On September 3, 2004, the bankruptcy court conducted oral argument on the cross-motions for summary judgment. At that hearing, the bankruptcy court denied PMCC's motion for partial summary judgment on its breach of contract claim and granted Owens Corning's motion for summary judgment in its entirety. The bankruptcy court documented its oral ruling in a written Order dated October 7, 2004. [D.I. No. 12883]. As part of that ruling, the bankruptcy court disallowed and expunged PMCC's Claim No. 6923 in its entirety. *Id. at ¶ 5.*

This is an appeal from the bankruptcy court's ruling on cross-motions for summary judgment. PMCC contends that the bankruptcy court committed reversible error as a matter of law in granting Owens Corning's summary judgment motion and in

denying PMCC's cross-motion. The bankruptcy court misapplied the facts and governing Colorado law to the claims asserted by PMCC.

## V. STATEMENT OF FACTS

1.    During the year 1997, Owens Corning decided to investigate the potential for hedging asphalt purchases. Edward Mirra asked Michael Mitchell to undertake that project. [D.I. No. 11827], *E. Mirra Dep. at 26:15-24,* relevant portions of which are attached as Exhibit "A" to PMCC's opposition to Debtors' motion for summary judgment (hereinafter *"E. Mirra Dep."*).

2.    At the time, Owens Corning did not have a good understanding of the potential or methodology for hedging asphalt purchases. *E. Mirra Dep. at 26:15-28:3.* Owens Corning wanted to investigate a hedging program that would assist it in managing its asphalt costs. *E. Mirra Dep. at 34:16-35:14;* [D.I. No. 11827], *M. Mitchell Dep. at 29:7-16,* relevant excerpts of which are attached as Exhibit "B" to PMCC's opposition to Debtors' motion for summary judgment (hereinafter *"M. Mitchell Dep."*). There was no one within Owens Corning with the expertise to develop a hedging program. [D.I. No. 11827], *Deposition Exhibit 75,* a true and correct copy of which is attached as Exhibit "C" to PMCC's opposition to Debtors' motion for summary judgment.

3.    Owens Corning purchased approximately 2.8 million tons of asphalt each year during the relevant time period. *M. Mitchell Dep. at 15:20-25.* Mitchell communicated this fact to PMCC. *M. Mitchell Dep. at 111:21-23.*

4.  On November 21, 1997, PMCC provided a draft proposal to Owens Corning for the development and design of a hedging program related to Owens Corning's asphalt purchases. *M. Mitchell Dep. at 37:17-38:11.* A true and correct copy of the proposal is attached as Exhibit D to PMCC's claim *(Claim No. 6923).*

5.  Mirra and Mitchell reviewed the November 21, 1997 proposal and determined that the cost was too high and that they would attempt to negotiate with PMCC for a different cost structure. Mirra never negotiated the Agreement with PMCC. He left that responsibility to Mitchell. *E. Mirra Dep. at 36:16-37:2; 41:2-43:7; M. Mitchell Dep. at 61:14-17.*

6.  Mitchell also reviewed the draft contract and the final Agreement with the Owens Corning legal department. *M. Mitchell Dep. at 38:12-38:16; 68:21-25; 72:11-14.*

7.  The July 30, 1998 proposal which is Exhibit A to the Agreement changed the project description to include "implement, manage and execute" the hedging program. Mitchell never noticed that change to the Agreement's language. *M. Mitchell Dep. at 65:6-67:15.*

8.  The July 30, 1998 proposal also included a profit sharing component. *M. Mitchell Dep. at 53:12-21; 59:21-24.*

9.  Keener Hudson advised Owens Corning against entering into a profit sharing contract with PMCC. *M. Mitchell Dep. at 51:3-17.*

10.    The Agreement was duly executed by both PMCC and Owens Corning on
October 23, 1998, evidencing their mutual assent to the terms therein. [D.I.
No. 11641], *Exh. B, Exh. 1 at 4* (hereinafter *"Agmt."*).

11.    Prior to execution of the Agreement, Owens Corning had no other agreements
with PMCC. The Agreement was never amended or modified. *M. Mitchell
Dep. at 78:19-79:3.*

12.    Owens Corning never revealed to PMCC that Owens Corning believed
implementation of the hedging program would require additional internal
approval from Owens Corning. *M. Mitchell Dep. at 80:18-81:3; 105:6-20.*
Owens Corning never requested any language in the contract regarding such
internal approval. *M. Mitchell Dep. at 84:7-85:10.* Owens Corning never
provided any information to PMCC regarding Owens Corning's derivatives
policy. *M. Mitchell Dep. at 96:18-24.*

13.    Owens Corning never discussed with PMCC the potential that Owens Corning
would not implement the entire hedging program. *M. Mitchell Dep. at 97:1-
11.*

14.    At the time he executed the Agreement on Owens Corning's behalf, Mirra
was a vice president and general manager at Owens Corning. *E. Mirra Dep.
at 9:6-14:10.*

15.    Mirra did not need anyone else's approval to sign the Agreement. *E. Mirra
Dep. at 55:5-7.*

16.    Mirra did not read the project definition in the Agreement closely – he glossed
over it. *E. Mirra Dep. at 57:12-60:12.*

17.    Mirra knew that the project description which included the language to implement, manage and execute the hedging program was part of the contract he executed. *E. Mirra Dep. at 62:15-65:17.*

18.    Mirra approved and strongly supported the contract with PMCC. [D.I. No. 11827], *Deposition Exhibit 75,* a true and correct copy of which is attached as Exhibit "C" to PMCC's opposition to Debtors' motion for summary judgment.

19.    Owens Corning did not communicate to PMCC that Owens Corning believed it would need additional internal approvals before implementing and executing the hedging program. *E. Mirra Dep. at 55:19-57:2.*

20.    The Agreement engaged PMCC to perform services for Owens Corning as described in a July 30, 1998 PMCC proposal which is attached to the Agreement as Exhibit A. *Agmt. at ¶ 1.*

21.    Owens Corning agreed to pay PMCC for performance of the services as set forth in the Compensation section of the proposal. *Agmt. at ¶ 3.*

22.    Owens Corning agreed to inform PMCC regarding hedging operations related to the hedging program that PMCC was facilitating. *Agmt. at ¶ 5.*

23.    Under the Agreement, Owens Corning had no direction or control over PMCC and agreed that the PMCC would perform the services while granting Owens Corning reasonable access to the operations. *Agmt. at ¶ 7.*

24.    The proposal which described the services PMCC was to provide defined the Project as follows: "To research, develop, design, implement, manage, and

execute the methodology and control procedures of a Hedging Program . . . ."

*Agmt., Exh. A at 1.*

25.   Owens Corning never implemented the hedging program that PMCC

developed and designed. *M. Mitchell Dep. at 126:18-20.*

26.   Owens Corning never executed the hedging program that PMCC developed

and designed. *M. Mitchell Dep. at 126:21-23.*

## VI. SUMMARY OF ARGUMENT

It is undisputed that: (1) PMCC and Owens Corning entered into the Agreement;

(2) the Agreement is valid and enforceable; (3) PMCC has performed its obligations

under the Agreement; (4) Owens Corning failed to honor their required obligations under

the Agreement when they refused to implement and execute the hedging program

developed and designed by PMCC; and (5) Owens Corning's breaches of the Agreement

injured PMCC.  These facts conclusively prove the elements of a breach of contract claim

in Colorado as a matter of law.  As a result, the bankruptcy court should have awarded

PMCC, not Owens Corning, summary judgment on PMCC's breach of contract claim.

Instead, the bankruptcy court articulated three equally unavailing reasons for

awarding Owens Corning summary judgment.  First, the bankruptcy court stated that the

Agreement only required Owens Corning to implement and execute the methodology and

control procedures of the Hedging Program developed by PMCC and, therefore, there

was no breach.  This is clearly erroneous because it is undisputed that Owens Corning

never implemented the methodology or control procedures provided by PMCC and,

therefore, breached the contract.  Second, the bankruptcy court effectively rewrote the

Agreement to add a condition that Owens Corning had complete discretion to implement

and execute the Hedging Program. There is no such discretion in the clear and unambiguous language of the Agreement. Third, although the bankruptcy court found that the Agreement was clear and unambiguous, it refused to enforce that clear and unambiguous language because it found that to do so would produce an unreasonable result. Each of the bankruptcy court's rulings constitutes reversible error as a matter of law.

The bankruptcy court compounded its errors concerning the breach of contract claim by also granting Owens Corning summary judgment on PMCC's claims for unjust enrichment, fraud, and breach of duties owed as a joint venturer. The bankruptcy court refused to hear or consider evidence outside the language of the contract with respect to each of those claims. That refusal to hear evidence on these questions of fact is reversible error. At a minimum, PMCC produced evidence – when viewed in the light most favorable to PMCC and when all reasonable inferences were drawn in PMCC's favor – which precluded summary judgment on these issues.

## VII. ARGUMENT

To prevail on its breach of contract claim, PMCC must prove the following elements: (1) the existence of a valid contract; (2) performance by PMCC or some justification for nonperformance; (3) failure to perform the contract by Owens Corning; and (4) resulting damages to PMCC. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053 (Colo. 1992). Summary judgment is proper on PMCC's breach of contract claim, but in PMCC's favor, because the undisputed facts prove each of these elements.

**A.    The Agreement Is A Valid And Enforceable Contract**

In order to establish the existence of a valid contract, the evidence must show that the parties agreed upon all essential terms. *Federal Lumber Co. v. Wheeler,* 643 P.2d 31, 36 (Colo.1981). The parties' agreement is evidenced by their manifestations of mutual assent. *See Restatement (Second) of Contracts § 17(1) (1981)* ("[t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and consideration...."). Further, a valid agreement should specifically identify the consideration for which the parties bargained, and the parties' signatures may indicate their mutual assent to those terms. *See I.M.A., Inc. v. Rocky Mountain Airways,* 713 P.2d 882, 888 (Colo.1986).

The Agreement was duly executed by both PMCC and Owens Corning on October 23, 1998, evidencing their mutual assent to the terms therein. *Agmt., Exh. 1 at 4.* The Agreement's terms are clear and explicit, and specifically identify the consideration to be exchanged by the parties. Neither party disputes that they entered into a valid contract as set forth in the Agreement.

**B.    PMCC Performed Its Obligations**

There is no dispute that PMCC performed its obligations under the Agreement to the extent Owens Corning's own breaches did not prevent such performance. The bankruptcy court ruled that this was the case. It is undisputed that PMCC researched, developed and designed the Hedging Program required by the Agreement. It is equally undisputed that PMCC attempted to implement, manage and execute the Hedging Program, but was thwarted by Owens Corning's refusal to honor its obligations.

12

**C.    The Agreement Required Debtors To Implement The Hedging Program**

At summary judgment, courts may properly interpret contract language. *F.D.I.C.
v. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1466 (D. Colo. 1996);
*Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750
(Colo. 1978).[1]  In doing so, the court must first determine whether a contract, or one of its
terms is ambiguous. *Engineered Data Products, Inc. v. Nova Office Furniture Inc.*, 849
F. Supp. 1412, 1417 (D. Colo. 1994).[2]  Absent an ambiguity, the Court must enforce the
contract as a matter of law, according to its plain and ordinary terms. *Smalley & Co. v.
Emerson & Cuming, Inc.*, 808 F. Supp. 1503, 1514 (D. Colo. 1992).

Under Colorado law, to interpret the Agreement, the Court must look primarily at
the Agreement's written terms. *Engineered Data Products, 849 F. Supp. at 1417; KN
Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769, 776, 779 (Colo. 1985).  The
Court must not amend or rewrite unambiguous contractual provisions.  Rather, it must
give effect to their plain and ordinary meaning. *Engineered Data Products*, 849 F. Supp.
at 1417.  Indeed, "[w]ritten contracts which are complete, clear in their terms and free
from ambiguity are enforced because they express the intention of the parties."
*Radiology Professional Corp.*, 577 P.2d at 750.[3]

The Court may **only** consider extraneous evidence -- that is, evidence beyond the
Agreement's four corners -- if the Agreement is ambiguous.  Whether a contract is

---

[1]    The parties agree that this case is governed by Colorado law.

[2]    Here, the parties agree and the bankruptcy court held that the Agreement is not ambiguous.

[3]    "It is only where the terms of an agreement are ambiguous or are used in some special or technical
sense not apparent from the contractual document itself that the court may look beyond the four corners of
the agreement in order to determine the meaning intended by the parties." *Pepcol Manufacturing Co. v.
Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984).

ambiguous is likewise a question of law. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996). To determine ambiguity, the Court must analyze and construe the language used in the Agreement "in harmony with the plain and generally accepted meaning of the words employed and by reference to all the parts and provisions of the agreement and the nature of the transaction which forms its subject matter." *Cheyenne Mountain School Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993).[4] Although the Court may conditionally admit extrinsic evidence to determine ambiguity, such as evidence of local usage and the circumstances giving rise to the contract, it "**may not consider the parties' own extrinsic expressions of intent**." *Cheyenne Mountain School Dist.*, 861 P.2d at 715 (emphasis added); *KN Energy*, 698 P.2d at 777. Similarly, it is reversible error to admit evidence that attempts to add to, subtract from, vary, contradict, change, or modify the terms of an unambiguous, integrated contract. *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996).[5] The Court may not rewrite an unambiguous contract, but must enforce it as written. *USI Properties East, Inc. v. Simpson*, 938 P.2d 168 (Colo. 1997); *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995) (where parties consummate transaction in detailed written document, "improper" for court to rewrite the transaction).

In the Agreement, Owens Corning engaged PMCC to perform the services described in the proposal attached to the Agreement as Exhibit A. *Agmt.* at ¶ *1*. Owens Corning further agreed to pay PMCC for performance of the services. *Id.* at ¶ *3*. Exhibit A to the Agreement defines the project for which Owens Corning engaged PMCC as

---

[4]     A mere disagreement between the parties as to a contract's interpretation does not create an ambiguity. The contract's language must be reasonably susceptible to more than one meaning. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996).

[5]     The Agreement is an integrated contract. *Agmt.* at ¶ *11*.

follows: "To research, develop, design, **implement, manage and execute** the methodology and control procedures of a Hedging Program for use in the management of Pricing of Flux . . . ." *Id., Exh. A at 1 (emphasis added)*. The Agreement did not limit itself to the research, development and design of a Hedging Program. Rather, it expressly required that Owens Corning implement and execute the program PMCC developed.

The Court must interpret the integrated Agreement in such a way as to harmonize and give effect to all of its provisions and so that none of its terms are rendered meaningless. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). Yet, the bankruptcy court's ruling renders several terms and provisions in the Agreement meaningless. The generally accepted meaning of the term **implement** is "to put into effect." *Ballentine's Law Dictionary (1969); see also Merriam-Webster's Collegiate Dictionary (10th Ed. 1998) (to carry out)*. Likewise, the generally accepted meaning of the term **execute** is "to carry out fully", "to complete", or "to put completely into effect." *Id.*[6] It is undisputed that Debtors never implemented nor executed the hedging program PMCC developed and designed.

The bankruptcy court first erred when it attempted to get around these facts and in doing so rendered the terms "implement," "execute," and "manage" meaningless. The bankruptcy court held that the Agreement only required Owens Corning to implement and execute the methodology and control procedures of the Hedging Program PMCC developed. [D.I. No. 13437 at 57-67, 69] *(hereinafter "Hearing Tr.")*. As an initial matter, the bankruptcy court's ruling shows a fundamental misunderstanding of the Hedging Program. If you implement and execute the methodology and control

---

[6]     The generally accepted meaning of the term **manage** further supports PMCC's position. Manage means "to direct; to control, to govern, to administer; to oversee." *Ballentine's Law Dictionary (1969)*.

procedures of a Hedging Program, you are in fact implementing and executing the
Hedging Program.  Notwithstanding that fact, the bankruptcy court's ruling simply
ignores the undisputed fact that **Owens Corning never allowed PMCC to implement or
execute the methodology or control procedures of the Hedging Program it
developed.**  That is a breach of the Agreement even under the bankruptcy court's
interpretation.

The bankruptcy court next held that Owens Corning had discretion to implement
and execute the Hedging Program.  *Id. at 64-65.*  That holding constitutes an
impermissible and reversible rewriting of the Agreement.  Neither Owens Corning nor
the bankruptcy court could point to any provision in the Agreement that gives Owens
Corning the option to implement the hedging program or gives it some approval right
over the program.  In fact, the opposite is true.  The Agreement does not provide that the
parties will implement, manage and execute the hedging program "at Owens Corning's
sole discretion" or "if Owens Corning obtains approval of certain officers."  These terms
do not exist in the Agreement because Owens Corning had no such right and neither it
nor the bankruptcy court can add such a right to the contract to which Owens Corning
agreed.  *Boyer*, 915 P.2d at 1299; *Nelson,* 908 P.2d at 107 (court will not step into
commercial transaction "after the fact" to rewrite intent clearly manifested by express
contract terms); *see also Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) (court's
duty to enforce contracts as written, not rewrite or restructure them).  If Owens Corning
wanted discretion to implement and execute the hedging program, Colorado law required
that it put that provision into the contract before executing it.  Owens Corning did not.
Rather, the bankruptcy court improperly presumed that Owens Corning intended to add

16

such a condition by implication or silence. That is reversible error. *KN Energy*, 698 P.2d at 777. Under the Agreement's express terms, Owens Corning had a contractual obligation to implement and execute the hedging program, not an option to unilaterally decide whether or not to implement and execute the program.

Finally, the bankruptcy court ruled that, although the Agreement was unambiguous, enforcement of that clear and unambiguous language would produce an unreasonable result. *Hearing Tr. at 59-60, 62-63, 69, 73* (finding unreasonable to believe that the contract did not require CFO approval; contract "flies in the face of corporate law;" unreasonable for contract to turn over responsibilities to independent contractor). Thus, the bankruptcy court refused to find that the Agreement required Owens Corning to allow PMCC to implement and execute the Hedging Program it developed. That holding is contrary to well-settled Colorado law and should be reversed.[7]

The bankruptcy court's conclusion that the Agreement leads to an absurd result because Owens Corning never would have conveyed "unlimited" authority for the hedging program to PMCC fails for several reasons. First, it contradicts the unambiguous contract language. The simple fact of the matter is that Owens Corning did convey authority concerning the hedging program to PMCC. The Agreement obligated Owens Corning to implement and execute the hedging program that PMCC designed and developed. As discussed above, the Agreement placed no conditions on those obligations. Further, Owens Corning agreed that it would have no direction or control over PMCC and that PMCC would actually perform all of the services while granting

---

[7]    Initially, to say that the Agreement flies in the face of corporate law is incredible, at best. The parties negotiated the Agreement for nearly a year, several of Owens Corning's executives participated in those negotiations, and Owens Corning's own legal department reviewed and approved the Agreement. [D.I. No. 11827]; *Exh. B at 68:10-72:14.*

Owens Corning observation rights and reasonable access to the operations. *Agmt. at* ¶ *7.*

Consequently, the bankruptcy court's conclusion that Owens Corning could never have

intended to convey authority to PMCC is irrelevant to the proper interpretation of the

unambiguous Agreement. *See Cheyenne Mountain School Dist.*, 861 P.2d at 715. [8]

Finally, the bankruptcy court improperly concluded that it could analyze the

unreasonableness or harshness of the Agreement even though it had already concluded

that the Agreement was unambiguous. That is incorrect. If the contract is unambiguous,

the court is required to enforce it as written and without regard to the consequences to the

parties of such enforcement. To do otherwise, as the bankruptcy court did, would ignore

the sanctity of contracts that Colorado courts repeatedly and consistently recognize. The

Colorado Supreme Court clearly enunciated this principle:

> [T]he right of private contract is no small part of the liberty of the citizen,
> and . . . the usual and most important function of courts of justice is rather
> to maintain and enforce contracts, than to enable parties thereto to escape
> from their obligation . . . . *Francam Bldg. Corp. v. Fail,* 646 P.2d 345,
> 349 (Colo. 1982)*(quoting Baltimore & Ohio Southwestern Ry. v. Voigt,*
> 176 U.S. 498, 505, 44 L. Ed. 560, 20 S. Ct. 385 (1900)). Where a party
> enters into a contract absent fraud, duress or incapacity, the courts will not
> relieve that party of the consequences of the bargain simply because it
> may have been improvident. *See Ace Flying Serv., Inc. v. Colorado Dep't
> of Agriculture,* 141 Colo. 467, 472, 348 P.2d 962, 965 (1960); *Sedalia
> Land Co. v. Robinson Brick & Tile Co.,* 28 Colo. App. 550, 553, 475 P.2d
> 351, 354 (1970).
> The court's duty is to interpret and enforce contracts as written between
> the parties, not to rewrite or restructure them. *See Yamin v. Levine,* 120
> Colo. 35, 38, 206 P.2d 596, 597 (1949)("If the contract clearly expresses
> the intentions of the parties, it must be construed as written . . . .");

---

[8]     Furthermore, that conclusion is contrary to the actual actions taken by Owens Corning. Although
the bankruptcy court concluded without factual support that Owens Corning would not turn over this type
of responsibility to an independent contractor, Owens Corning had in fact done just that at least twice. In
1999, Owens Corning and Enron announced a "more than $1 billion ten-year outsource agreement for total
energy management services at 20 of Owens Corning's major manufacturing facilities throughout the
United States." *See http://www.enron.com/corp/pressroom/releases/1999/ene/owenscorning1.html.*
Likewise, in 2004, Prenova, Inc. announced that it was awarded a contract extension by Owens Corning for
supply-side energy management for Owens Corning's North American facilities. *See
http://www.livepowernews.com/stories04/1116/004.htm.*

> *Gertner v. Limon Nat'l Bank,* 82 Colo. 13, 41, 257 P. 247, 257 (1927)
> (stating that "courts do not make contracts for parties" and "do not open
> their doors to those that are suffering merely from their own bad
> bargains"). The court will not interfere with the valid bargain of the
> parties. The impossibility of courts attempting to act as business clearing
> houses for the readjustment of legitimate profits and losses occurring in
> the marts of trade and commerce is obvious at a glance. To attempt it . . .
> would be an unwarranted interference with the freedom of action of
> business men in their private affairs. *Nelson v. Van Schaack & Co.,* 87
> Colo. 199, 203, 286 P. 865, 867 (1930).
>
> Parties to a contract, therefore, may agree on whatever terms they see fit
> so long as such terms do not violate statutory prohibitions or public policy.
> *See e.g., USI Properties East, Inc. v. Simpson,* 938 P.2d 168, 173 (Colo.
> 1997); *Aetna Cas. & Sur. Co. v. McMichael,* 906 P.2d 92, 100 (Colo.
> 1995); *Westminster Properties, Inc. v. Atlanta Assocs.,* 250 Ga. 841, 301
> S.E.2d 636, 638 (Ga. 1983)("Partners generally, be they general or
> limited, may make any agreement between themselves that they deem
> desirable so long as said agreement is not in violation of prohibitory
> statutory provisions, the common law, or relevant considerations of public
> policy."). Additionally, where a contract is clear and unambiguous, courts
> must give effect to the plain and ordinary meaning of its terms. *See Wota
> v. Blue Cross & Blue Shield,* 831 P.2d 1307, 1309 (Colo. 1992).

*Fox v. I-10, Ltd.,* 957 P.2d 1018, 1022 (Colo. 1998) (en banc).[9]  The bankruptcy court's

decision violates these long standing principles of contract law.  The bankruptcy court

improperly refused to enforce the Agreement as written, simply because it believed that

to do so would further an unreasonable construction.  That is reversible error.

---

[9]     Curiously, the bankruptcy court ignored this well-settled law even though it is the majority rule
throughout the country, including in Pennsylvania.

> [W]here language is clear and unambiguous, the focus of interpretation is upon the
> terms of the agreement as manifestly expressed, rather than as, perhaps, silently
> intended.
> "[T]his Court long ago emphasized that '[t]he parties [have] the right to make their own
> contract, and it is not the function of this Court to re-write it, or to give it a construction
> in conflict with . . . the accepted and plain meaning of the language used.'" . . . "'It is
> not the province of the court to alter a contract by construction or to make a new
> contract for the parties; its duty is **confined** to the interpretation of the one which they
> have made for themselves, without regard to **wisdom or folly.**'"
>
> *Amoco Oil Co. v. Snyder,* 505 Pa. 214, 220-21, 478 A.2d 795, 798 (1984)*(citations
> omitted).*

19

**D.    Summary Judgment Is Not Proper On PMCC's Fraud Claims**

Whether there has been fraud is a question of fact for the jury. *Mehaffy, Rider, Windholz & Wilson v. Central Bank of Denver, N.A.*, 892 P.2d 230, 238 (Colo. 1995). The relevant question for the bankruptcy court in resolving Owens Corning's motion for summary judgment, therefore, is whether the evidence presented by the parties "is so one-sided that a reasonable jury could only arrive at one conclusion." *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 668 (10th Cir. 1990). Based upon the facts here, there is no question that a reasonable jury could conclude that Owens Corning lured PMCC into developing a hedging program at a significantly reduced cost to assist Owens Corning by concealing information from PMCC that Owens Corning had a duty to reveal. Owens Corning argued that it had no duty to disclose the view that any implementation or execution of the hedging program would require additional approval from within Owens Corning. Setting aside for the purposes of this argument only that the Agreement allowed no such further approval, Owens Corning did have duties to disclose that information. In Colorado, a person has a duty when dealing with another to disclose material facts which "in equity and good conscience should be disclosed." *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105 (Colo 1998). The Colorado Jury Instructions set forth the circumstances in which a party has a duty to disclose. *CJI-Civ. 19:5 (2004)*. Owens Corning had a duty to disclose because the parties were joint venturers. *Id. at (1)*; *Hanson v. Chamberlin*, 233 P. 830 (1925).[10] Owens Corning had a duty to disclose because it stated some facts – that it would implement the program if PMCC agreed to

---

[10]    The existence of a joint venture is a question of fact. *Dime Box Petroleum Corp. v. The Louisiana Land Exploration Co.*, 938 F.2d 1144, 1147 (10th Cir. 1991). As such, it is inappropriate for summary judgment and without resolving that issue, the bankruptcy court could not properly determine on summary judgment that Owens Corning had no duty to disclose.

profit sharing – that they knew would create a false impression. *CJI-Civ. 19:5 (2)*. Owens Corning had a duty to disclose because it knew that PMCC could not otherwise discover for itself that Owens Corning believed it required additional approval before implementing the hedging program. *Id. at (4)*. Owens Corning had a duty to disclose because Mr. Mitchell orally represented and Mr. Mirra represented when he signed the Agreement that Owens Corning would implement and execute the hedging program when they knew undisclosed facts made that performance unlikely. *Id. at (6); see also Restatement (Second) Of Torts § 551(2).*[11]

Despite all of these legal duties under Colorado law, the bankruptcy court refused to consider any evidence which supported those duties. The bankruptcy court did not consider evidence in support of PMCC's fraud claims because it believed it could not "go outside the document" to consider such evidence. *Hearing Tr. at 72, 77-79.* The bankruptcy court's belief is contrary to Colorado law. It is well-settled that certain common law claims that sound in tort may exist independent of a breach of contract claim. *Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256, 1263 (Colo. 2000); *see also Brody v. Bock,* 897 P.2d 769, 776 (Colo. 1995)(common law fraud claim is based on violation of a duty independent of contract). Moreover, neither the parole evidence rule nor a general integration clause in agreements bar or waive claims for fraud or misrepresentation under Colorado law. *Keller v. A.O. Smith Harvestore Prods., Inc.,* 819 P.2d 69, 73 (Colo. 1991)(misrepresentation is a tort claim based "not on principles of contractual obligation but on principles of duty and reasonable conduct."). The implied

---

[11]    The fact that Mirra and Mitchell admit that they did not read the agreement before signing it further supports PMCC's fraud claim. Setting aside the fact that they are charged with the contractual obligations whether they read it or not, *see Rasmussen v. Freehling,* 412 P.2d 217, 219 (Colo. 1966), the fact that they did not bother to consider Owens Corning's contractual obligations before signing indicates that they never intended to honor the obligations anyway.

covenant of good faith and fair dealing, which encourages honesty and candor in contract negotiations, supports this result. The implied covenant of good faith and fair dealing would virtually be eliminated if a contracting party could escape liability for fraudulent conduct simply by inserting a general integration clause into the agreement. *Id.* Thus, the bankruptcy court's refusal to consider evidence outside the Agreement with respect to PMCC's fraud claim was contrary to law and reversible error.

### E.    Summary Judgment On PMCC'S Unjust Enrichment Claim Is Improper

Unjust enrichment occurs when (1) at the plaintiffs' expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. *See Salzman v. Bachrach*, 996 P.2d 1263 (Colo. 2000); *American Fam. Mut. Ins. Co. v. Centura Health-St. Anthony Central Hosp.*, 46 P.3d 490 (Colo. App. 2002). PMCC attempted to proceed alternatively on its claim for unjust enrichment. *See Backus v. Apishapa Land & Cattle Co.*, 615 P.2d 42 (Colo. App. 1980); *see* generally C.R.C.P. 8(e)(2). A plaintiff is entitled to recover based on the unjust enrichment of a defendant when the plaintiff has no alternative right on an enforceable contract. Here, the bankruptcy court ruled that Owens Corning was not obligated to implement and execute the hedging program. As a result, Owens Corning received the hedging program and all the supporting information and intellectual property at approximately 10% of its customary cost. The evidence shows that Owens Corning only received this significant reduction in PMCC's normal fees because Owens Corning told PMCC that it would implement and execute the hedging program. *See* [D.I. No. 9834], *Exh. A, D. Mangan 4/2/02 Affidavit at ¶¶ 5-6; id., Exh. A, R. Zoller 4/3/02 Affidavit at ¶¶ 9-10, 12.; compare* [D.I. No. 9834], *Exh. B* ("to research, develop, design, implement,

manage and execute the methodology and control procedures of a hedging program")

*with* [D.I. No. 9834]*; Exh. D* ("to research, develop, design and recommend methodology

of implementation and control procedures of a hedging program"). The evidence shows

that Owens Corning received a 90% cost benefit at PMCC's expense and it would be

unjust if Owens Corning did not compensate PMCC for that benefit. Yet, the bankruptcy

court again refused to consider any evidence outside the contract. *Hearing Tr. at 69-71.*

**F.     The Bankruptcy Court Failed to Consider Evidence of A Joint Venture**

Whether a relationship can be construed as a joint venture is a question of fact.

*Dime Box Petroleum Corp. v. The Louisiana Land and Exploration Co.*, 938 P.2d 1144,

1147 (10th Cir. 1991). PMCC presented facts which support establishment of a joint

venture between it and Owens Corning. PMCC and Owens Corning had a joint interest

in the Hedging Program and the resulting profits generated by the implementation of the

program. The Agreement provides that the parties will share in the profits and losses

generated by implementation of the hedging program. *Agmt., Exh. A at 10.* And, the

parties were obligated to cooperate in the venture by virtue of continuing meetings,

Owens Corning's right to reasonable access to operations, Owens Corning's continuing

obligation to implement and execute the hedging program, and PMCC's obligation to

manage the hedging program. These facts viewed in PMCC's favor, as the bankruptcy

court was required to do and as this Court must, establish the three elements necessary to

prove a joint venture under Colorado law. The bankruptcy court ignored these facts in its

ruling and did not support its ruling with any contrary facts. That failure constitutes

reversible error.

## CONCLUSION

For all of these reasons, PMCC respectfully requests that this Court: (1) reverse the bankruptcy court's ruling in its entirety; (2) deny Owens Corning's motion for summary judgment; (3) grant PMCC's motion for partial summary judgment on PMCC's breach of contract claim; (4) remand the case for further proceedings on PMCC's remaining claims and for other necessary proceedings; and (5) award PMCC such other an further relief as the Court deems just and proper.

Dated: June 1, 2005                    Respectfully submitted,

                        By:    _____
                               Richard H. Cross, Jr. (No. 3576)
                               Sean T. O'Kelly (No. 4349)
                               Cross & Simon, LLC
                               913 North Market Street, 11th Floor
                               P.O. Box 1380
                               Wilmington, Delaware  19899-1380
                               302-777-4200
                               302-777-4224 (fax)
                               sokelly@crosslaw.com

                               and

                               HENSLEY KIM & EDGINGTON, LLC
                               M. Shane Edgington (Colo. Bar No. 21830)
                               1660 Lincoln St., Ste. 3050
                               Denver, CO  80264
                               720-377-0770
                               720-377-0777 (fax)
                               shane@HKE-Law.com